1
2
3
4
5
6

7
8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| JAY SCHUYLEMAN, | CASE NO. C23-0562JLR |
|---|---|
| Plaintiff, | CLAIM CONSTRUCTION ORDER |
| v. | |
| BARNHART CRANE AND RIGGING CO., et al., | |
| Defendants. | |

## I.   INTRODUCTION

This matter comes before the court on the parties' disputes regarding eight claim terms in United States Patent No. 8,317,244 (the "'244 Patent"). (3d Am. Compl. (Dkt. # 42) Ex. 1.) The court has reviewed Plaintiff Jay Schuyleman's and Defendants Barnhart Crane and Rigging Co. and Barnhart Crane and Rigging LLC's (together, "Barnhart") claim construction briefs (Schuyleman Op. (Dkt. # 62); Barnhart Op. (Dkt. # 63); Schuyleman Resp. (Dkt. # 64); Barnhart Resp. (Dkt. # 65)), all materials filed in

1   support thereof, the relevant portions of the record, and the relevant case law.  The court
2   also heard oral argument from the parties at a *Markman* hearing on October 4, 2024.  (*See*
3   10/4/24 Min. Entry (Dkt. # 72)).)  Being fully advised, the court issues the present claim
4   construction order resolving the parties' disputes.

## II.     DESCRIPTION OF THE ASSERTED PATENT

The '244 Patent, entitled "Apparatus and Method for Positioning an Object in a Building," issued on November 27, 2012 to Mr. Schuyleman, and has an effective filing date of August 22, 2008.  (*See generally* '244 Patent.)  The '244 Patent addresses the problem of depositing a load, such as a wall panel, into an opening in a building during construction.  (*See generally id.*)  Dangling a load directly below a crane hook and holding it in front of an opening is dangerous because workers must approach the ledge and reach out to grab the load and pull it inside.  (*See id.* at 1:35-44.)  The '244 Patent purports to offer a safe, efficient solution to this problem through the use of an "offset hoisting apparatus" comprising a beam—or "rigid boom"—capable of being "selectively slid between a refracted position and an extended position." (*Id.* at 40:40-41.)  The beam travels along the x-axis by sliding through mounts attached to the offset hoisting apparatus.  (*Id.* at 3:43-53.)  Once the beam has been slid into the appropriate position, the load is hooked to the far end of the beam.  (*See id.* at 4:40-43.)  A crane can then pick up the offset hoisting apparatus and deposit the load several feet inside of an opening. (*See id.* fig. 1.)

//

//

## III. ANALYSIS

**A.    Legal Standard**

Claim construction "is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). "When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

The words of a claim "are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

Where, as here, the patentee has neither acted as his or her own lexicographer nor disavowed the full scope of any claim terms (*see* 10/4/24 Tr. (Rough) at 15:24-16:7),[1] the court must determine each disputed term's "ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history," *Thorner*, 669 F.3d at 1365. The specification "is the single best guide to the meaning of a disputed term" and, "[u]sually, it is dispositive."

//

---

[1] The court cites the rough transcript in this order because the official transcript is not yet available. The court recognizes that the rough transcript is not the definitive record of the *Markman* hearing.

ORDER - 3

*Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Extrinsic evidence, such as expert and inventor testimony, dictionaries, and learned treatises, is "less significant [and less reliable] than the intrinsic record in determining 'the legally operative meaning of claim language'" but nevertheless "can shed useful light on the relevant art." *Id.* at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)).

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. No construction may be necessary where "[t]he phrases at issue use common English terms within the ordinary understanding of the Court and jurors" and there is no "evidence suggesting that the[] words have special meaning to a person skilled in the art." *Reck-n-Rack LLC v. Just Encase Prods. Inc.*, No. 22-cv-0503-bhl, 2024 WL 964206, at *3 (E.D. Wis. Mar. 6, 2024). If "a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute," however, "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate." *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1318 (Fed. Cir. 2016) (quoting *O2 Micro*, 521 F.3d at 1361).

**B.  Disputed Terms**

The court identifies the relevant claim terms and resolves the parties' disputes below. The court endeavors to determine each disputed term's ordinary and customary

meaning as understood by a person of ordinary skill in the art ("POSITA"), which in this case "is someone with a Bachelor's degree in mechanical engineering, structural engineering, applied physics, or a related field with at least four years of engineering experience analyzing, designing, or developing construction equipment for rigging or crane-related devices." (10/2/24 Order (Dkt. # 71) at 2.)

### 1. "offset hoisting apparatus"

Barnhart argues that "offset hoisting apparatus" is indefinite under pre-AIA 35 U.S.C. § 112 ¶ 2. (Barnhart Op. at 5.) Barnhart requests, to the extent the court "deems the term 'offset hoisting apparatus' definite (or postpones the issue for summary judgment)," the court "should still hold that the preamble is limiting." (*Id.* at 9.) As discussed during the *Markman* hearing, the court declines to rule on the issue of indefiniteness at this time and finds that the preamble is limiting. (10/4/24 Tr. (Rough) at 5:7-9, 6:12-19.)

### 2. "rigid boom"

Barnhart asks the court to construe "rigid boom" as "a support arm having a fixed length." (Barnhart Op. at 11.) Mr. Schuyleman does not believe the term requires construction beyond its plain and ordinary meaning (Schuyleman Op. at 18) and indicated during the *Markman* hearing that a POSITA would understand the plain and ordinary meaning to be something akin to a "beam" or "support" "that is largely incompressible" or does not "flex" (10/4/24 Tr. (Rough) at 8:7-9:4). The court agrees with Mr. Schuyleman that the term does not require "having a fixed length" and adopts the following construction: "a beam that is largely inflexible."

1        In reviewing the '244 Patent's claims, specification, and prosecution history, the
2 court finds no basis to conclude that a POSITA would understand the ordinary meaning
3 of "rigid boom" to require the boom to have a fixed length.  The court agrees with Mr.
4 Schuyleman's expert, Dr. Klopp, that a POSITA would understand "rigid boom" in the
5 context of the '244 Patent to simply require a support that bends relatively little under
6 load (Klopp Decl. (Dkt. # 61-9) ¶ 26), and the court's construction endeavors to capture
7 that sentiment.  Indeed, Barnhart's expert, Mr. Perkin, testified that he did not "use the
8 plain and ordinary meaning in [his] construction of the term 'rigid boom,'" which he
9 believes requires having a fixed length.  (Perkin Dep. (Dkt. # 61-15) at 24:6-11; *see*
10 Perkin Decl. (Dkt. # 61-4) ¶ 51.)

11       Although Barnhart is correct that one embodiment of the patented invention
12 contains a rigid boom having a fixed length (*see* '244 Patent fig. 1), the court declines to
13 import that limitation into the claims.  *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358
14 F.3d 898, 906 (Fed. Cir. 2004) ("[T]his court has expressly rejected the contention that if
15 a patent describes only a single embodiment, the claims of the patent must be construed
16 as being limited to that embodiment." (collecting cases)); *Phillips*, 415 F.3d at 1323
17 ("[A]lthough the specification often describes very specific embodiments of the
18 invention, we have repeatedly warned against confining the claims to those
19 embodiments.").  Nothing in the '244 Patent is inconsistent with a "rigid boom" having
20 an adjustable length (*see generally* '244 Patent), and the court is persuaded by Mr.
21 Schuyleman's argument that a POSITA would not understand "rigid" and "adjustable" to
22 //

be mutually exclusive. (*See* 10/4/24 Tr. (Rough) at 9:19-20 ("[A] telescoping beam can still be rigid, but is not necessarily fixed.").)

The court therefore construes "rigid boom" as "a beam that is largely inflexible."

3. "front mount" / "rear mount"

Barnhart asks the court to construe "front mount" / "rear mount" as "a support structure disposed between the center of gravity and the distal end of the rigid boom" / "a support structure disposed between the center of gravity and the proximal end of the rigid boom." (Barnhart Op. at 12-13.) Mr. Schuyleman does not believe the terms require construction beyond their plain and ordinary meaning (Schuyleman Op. at 18) and noted during the *Markman* hearing that the front mount was simply "the mount that's closest to the load" and the rear mount was "the mount that's closest to the opposite end of the boom" (10/4/24 Tr. (Rough) at 18:25-19:4). The court agrees with Mr. Schuyleman. The court construes "front mount" as "the mount closest to the distal end of the rigid boom" and "rear mount" as "the mount closest to the proximal end of the rigid boom."

The court agrees with Dr. Klopp's conclusion that Barnhart's proposed "center of gravity" limitation is inappropriate. (*See* Klopp Decl. ¶¶ 36-37.) The "center of gravity" need not be between the two mounts simply because of one illustration in the '244 Patent. (*See* '244 Patent fig. 1; Klopp Decl. ¶ 37; *see also* Perkin Dep. at 24:25-25:8 (Mr. Perkin testifying that his proposed construction of "front mount" is "not the plain and ordinary meaning").) Moreover, introducing a "center of gravity" limitation—which is not discussed in the intrinsic evidence—would lead to a subsequent dispute over *which* center of gravity is at play. (*See* Klopp Decl. ¶ 35 ("[T]he 'center of gravity' could refer to that

of the load carried by the apparatus, that of the 'offset hoisting apparatus,' or the combination.").)  Simply put, Barnhart's proposed construction would make a mess of this term and create more disputes than it resolves.

The court therefore construes "front mount" as "the mount closest to the distal end of the rigid boom" and "rear mount" as "the mount closest to the proximal end of the rigid boom."

### 4. "front boom aperture" / "rear boom aperture"

Barnhart asks the court to construe "front boom aperture" / "rear boom aperture" as "a hole through the front mount wherein the interior surface of same is sized to conform with the exterior dimensions of the boom" and "a hole through the rear mount wherein the interior surface of same is sized to conform with the exterior dimensions of the boom."  (Barnhart Op. at 15.)  Mr. Schuyleman does not believe the terms require construction beyond their plain and ordinary meaning (Schuyleman Op. at 18-19) and indicated during the *Markman* hearing that a POSITA would understand each boom aperture to be an "opening" "through which the boom . . . travels" (10/4/24 Tr. (Rough) at 23:2-7).  The court agrees with Mr. Schuyleman and construes "front boom aperture" and "rear boom aperture" together as "openings through which the rigid boom may travel."

In reviewing the '244 Patent's claims, specification, and prosecution history, the court finds no basis to conclude that a POSITA would understand the ordinary meaning of "boom aperture" to require fully surrounding the rigid boom.  The court agrees with

//

1  Dr. Klopp that "the aperture shape need not conform to the exterior dimensions of the
2  boom to confine the boom to slidable movement." (Klopp Decl. ¶ 41.)
3        Barnhart again attempts to import a limitation disclosed in one embodiment of the
4  patented invention into the claims. (*See* '244 Patent fig. 4.)  Barnhart's argument that
5  claim 4's discussion of a "pin aperture"—which must fully encircle the pin to be
6  effective—requires the "boom aperture" to fully surround the boom is unpersuasive. (*See*
7  10/4/24 Tr. (Rough) at 25:2-13.)  These are two different "apertures," and while a "pin
8  aperture" may need to fully encircle a relatively small pin to perform its intended
9  function, Dr. Klopp persuasively explains why a "boom aperture" need not fully surround
10 the boom to properly function. (*See* Klopp Decl. ¶ 41 (providing the example of a
11 "dovetail guide").)  The court agrees with Dr. Klopp's sentiment that a POSITA would
12 understand an aperture to simply be an opening that adequately holds in place or guides a
13 structure. (*See id.* ¶ 41.)  Depending on the structure, the aperture may need to be
14 enclosed, but a POSITA would not understand that to necessarily be the case with respect
15 to a "boom aperture" in the context of the '244 Patent.
16       The court therefore construes "front boom aperture" and "rear boom aperture"
17 together as "openings through which the rigid boom may travel."
18       5.    "confining the boom"
19       Barnhart asks the court to construe "confining the boom" as "restricting movement
20 of the rigid boom except along its longitudinal axis by contact with each of the boom's
21 lateral sides." (Barnhart Op. at 17.)  Mr. Schuyleman does not believe the term requires
22 construction beyond its plain and ordinary meaning (Schuyleman Op. at 19) and

ORDER - 9

indicated during the *Markman* hearing that "confining the boom" simply means restricting the boom to front and rear movement (*see* 10/4/24 Tr. (Rough) at 30:15-18). For the same reasons the court agreed with Mr. Schuyleman that the "boom aperture" need not fully surround the rigid boom, the court construes "confining the boom" as simply "restricting the boom to forward and backward movement."

6. "slidable movement"

Barnhart asks the court to construe "slidable movement" as "movement of components relative to one another along their respective surfaces." (Barnhart Op. at 19.) Mr. Schuyleman does not believe the term requires construction. (Schuyleman Op. at 20; 10/4/24 Tr. (Rough) at 35:2-4.) The court agrees with Mr. Schuyleman and declines to construe this term.

"Slidable movement" simply means that the boom slides. The meaning is readily apparent to a lay audience, and there is no evidence that the term has any special meaning to a POSITA. Nothing in the intrinsic evidence indicates that the surface of the boom must make direct contact with the boom aperture while sliding. Moreover, Barnhart's proposed construction would create an inconsistency between claims 1 and 2. Claim 2 includes a "lowfriction surface" between the boom aperture and the rigid boom. If Claim 1 required direct contact between the "respective surfaces" of the rigid boom and boom apertures, as Barnhart suggests, a situation would arise in which it would be possible to infringe claim 2, a dependent claim, without also infringing claim 1, the independent claim.

The court therefore declines to construe this term.

7. "therethrough"

Barnhart asks the court to construe "therethrough" as "passing into at one side and out of at the opposite side." (Barnhart Op. at 20.) Mr. Schuyleman does not believe the term requires construction beyond its plain and ordinary meaning (Schuyleman Op. at 20), which he indicated at the *Markman* hearing "just means through" (10/4/24 Tr. (Rough) at 36:22). The court largely agrees with Barnhart and construes "therethrough" as "allowing the rigid boom to slide through one side and out the other of both the front and rear mounts."

A POSITA would understand "therethrough" in the context of the '244 Patent to require the rigid boom to be capable of passing into and out of the front and rear mounts. That is exactly how the invention is supposed to work. To deposit a load inside of a building, the boom must be "slid between a refracted position and an extended position." ('244 Patent at 2:44-45). To do that, the rigid boom must slide through the apertures in the front and rear mounts. (*See id.* at claim 1). If the rigid boom could not pass into and out of the front and rear mounts, there would be no "slidable movement therethrough." Of course, in its most forward-extended position, the rigid boom might only be inside of the rear mount (and not sticking out the end), but the rigid boom would still be capable of passing all the way through the rear mount as it slides into a refracted position. The '244 Patent does not contemplate slidable movement merely "inside of" the front and rear mounts. (*See generally id. See* 10/4/24 Tr. (Rough) at 39:14-22.) Instead, it describes and claims slidable movement "therethrough." (*See* '244 Patent at claim 1.) To pass

//

"therethrough," the rigid boom must be capable of sliding into one side and out the other of the front and rear mounts.

The court therefore construes "therethrough" as "allowing the rigid boom to slide through one side and out the other of both the front and rear mounts."

8. "fixed with"

Barnhart asks the court to construe "fixed with" as "directly engaged to and not in." (Barnhart Op. at 22.) Mr. Schuyleman does not believe this term requires construction beyond its plain and ordinary meaning (Schuyleman Op. at 20) and argued during the *Markman* hearing that the plain and ordinary meaning is "[a]ttached to" (10/4/24 Tr. (Rough) at 41:9). The court agrees with Mr. Schuyleman and construes "fixed with" as "attached in some way to."

A POSITA would understand "fixed with" in the context of the '244 Patent to simply mean that the front and rear mounts are attached in some way to the offset hoisting apparatus. Claim 12, for example, contemplates that the mounts are attached to the offset hoisting apparatus via a "clamping means." ('244 Patent at claim 12.) Claim 13 specifies that the "clamping means" comprises a "bolt and nut." (*Id.* at claim 13.) Barnhart's proposed construction is problematic because "directly engaged to" might, for example, mean that washers could not be placed between the mounts and offset hoisting apparatus. Barnhart's proposed limitation of "not in" is also not supported by the intrinsic evidence and raises more questions than it answers. One Lego may be fixed with another Lego by being pressed partially into the latter. Is one Lego "in" the other? The court declines to make a mess of this straightforward term.

The court therefore construes "fixed with" as "attached in some way to."

## IV. CONCLUSION

For the foregoing reasons, the court ADOPTS the following constructions of the disputed claim terms:

1. "offset hoisting apparatus" – N/A

2. "rigid boom" – "a beam that is largely inflexible"

3. "front mount" / "rear mount" – "the mount closest to the distal end of the rigid boom" / "the mount closest to the proximal end of the rigid boom"

4. "front boom aperture" / "rear boom aperture" – "openings through which the rigid boom may travel"

5. "confining the boom" – "restricting the boom to forward and backward movement"

6. "slidable movement" – no construction necessary

7. "therethrough" – "allowing the rigid boom to slide through one side and out the other of both the front and rear mounts"

8. "fixed with" – "attached in some way to"

Dated this 9th day of October, 2024.

JAMES L. ROBART
United States District Judge