1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10 | JAY SCHUYLEMAN,                          CASE NO. C23-0562JLR

11 |                          Plaintiff,      ORDER

12 |            v.

13 | BARNHART CRANE AND
     RIGGING CO., et al.,

14 |                          Defendants.

15

## I.    INTRODUCTION

16

17      Before the court are (1) Defendants / Counter-Claimants Barnhart Crane and

18 Rigging Co., and Barnhart Crane and Rigging LLC's (together, "Barnhart") motion for

summary judgment on Plaintiff Jay Schuyleman's direct and induced infringement claims

19 and on Barnhart's invalidity counterclaim (Barnhart MSJ (Dkt. # 94); Barnhart MSJ

20

21 Reply (Dkt. # 109)); (2) Mr. Schuyleman's motion for summary judgment on Barnhart's

22

invalidity counterclaim (Schuyleman MSJ (Dkt. # 95))[1]; and the parties' respective

motions *in limine* (Schuyleman Am. MILs (Dkt. # 115); Barnhart MILs (Dkt. # 116).)

Both of the summary judgment motions are opposed.  (*See* Schuyleman Resp. (Dkt.

# 102); Barnhart Resp. (Dkt. # 104).)  The court has considered the parties' submissions,

the relevant portions of the record, and the applicable law.  Being fully advised,[2] the

court GRANTS Barnhart's motion for summary judgment with respect to its invalidity

counterclaim, DENIES Mr. Schuyleman's motion for summary judgment, and DENIES

the parties' motions *in limine* as moot.

## II.    BACKGROUND

This case arises out of Barnhart's alleged infringement of Mr. Schuyleman's

intellectual property rights.  Mr. Schuyleman owns United States Patent No. 8,317,244

(the "'244 Patent").  (*See* Third Am. Compl. (Dkt. # 42), Ex. 1.)  The '244 Patent claims

"an improvement for an offset hoisting apparatus for use with a crane to lift a load" that

purports to facilitate the safe depositing of a load into an opening of a building during

construction.  (*Id.* at col. 2:13-14; *see generally id.*)  The '244 Patent uses an "offset

hoisting apparatus" with a "rigid boom" that is capable of being "selectively slid between

a refracted position and an extended position" through mounts attached to the offset

---

[1] Mr. Schuyleman did not file a reply in support of his motion for summary judgment. (*See generally* Dkt.)

[2] Barnhart requested oral argument on its motion for summary judgment.  (*See* Barnhart MSJ at 1.)  The court, however, concludes that oral argument would not aid its disposition of the parties' motions.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

1    hoisting apparatus.  (*Id.* at col. 4:40-43.)  A crane can lift the offset hoisting apparatus

2    and deposit the load several feet inside of an opening in the building.  (*See id.* fig. 1.)

3          Mr. Schuyleman asserts that certain of Barnhart's products infringe claims 1, 4,

4    16, and 17 of the '244 Patent (the "Asserted Claims"),[3] specifically:  (1) the Moveable

5    Counterweight Cantilever System ("MOCCS") (e.g., Standard Movable Counterweight

6    Cantilever System and Movable Counterweight Double Beam)[4]; (2) the Mini-MOCCS;

7    and (3) the Mega-MOCCS (collectively, the "Accused Products").  (Third Am. Compl.

8    ¶ 6.)  Mr. Schuyleman asserts that Barnhart directly infringes the Asserted Claims by

9    making and using the Accused Products.  (Third Am. Compl. ¶ 36; Schuyleman Resp. to

10   Fourth Set of Interrogatories (Dkt. # 94-19) No. 24.)  Mr. Schuyleman further asserts that

11   Barnhart induced infringement of the Asserted Claims because it "ha[s] a number of

12   separate subsidiary companies that may use the Accused Products."  (Schuyleman Resp.

13   to Fourth Set of Interrogatories (Dkt. # 94-19) No. 24; *see* Third Am. Compl. ¶¶ 38, 40.)

14         On January 17, 2024, Mr. Schuyleman served his preliminary disclosure of

15   asserted claims and infringement contentions.  (*See* Prelim. Cont. (Dkt. # 65-1).)  Mr.

16   Schuyleman timely served amended infringement contentions on March 22, 2024.  (*See*

17

18         [3] At the outset of this case, Mr. Schuyleman asserted claims 1, 2, 4, 12, 13, 16, and 17 against
     Barnhart. (*See* Barnhart MSJ, Ex. 2 ("Infringement Contentions").)  However, when serving its
19   retained expert Dr. Richard Klopp's opening report, Mr. Schuyleman informed Barnhart that claims
     1, 4, 16, and 17 are "the claims [he] is pursuing at this time."  (*See* 10/19/24 Email (Dkt. # 94-4) at 2;
20   *see* Klopp Op. Report (Dkt. # 94-8) at 12-15 (noting that only claims 1, 4, 16, and 17 are asserted).)

21         [4] Mr. Schuyleman did not accuse a single-beam configuration of the MOCCS in his
     Infringement Contentions.  (*See generally* Infringement Contentions); *see* Schuyleman Resp. to
22   Third Set of RFAs (Dkt. # 94-17) Nos. 131-33.)

1   Barnhart MSJ, Ex. 2 ("Infringement Contentions").)  Barnhart subsequently served its

2   invalidity and non-infringement contentions.  (*See generally* Contention Amend. Motion

3   (Dkt. # 76); 4/25/24 Order (Dkt. # 53) (setting 4/12/24 deadline for service of non-

4   infringement and invalidity contentions).)  Following the *Markman* hearing and the

5   issuance of the court's claim construction order (*see* 10/4/24 Min. Entry (Dkt. # 72); CC

6   Order (Dkt. # 73)), the court granted Barnhart leave to amend its invalidity and non-

7   infringement contentions (11/26/24 Order (Dkt. # 81)).  On December 3, 2024, Barnhart

8   filed its amended invalidity and non-infringement contentions, claiming therein, as

9   relevant here, that the '244 Patent is invalid as indefinite under pre-AIA 35 U.S.C.

10  § 112.[5]  (*See* Notice Barnhart Am. Cont. (Dkt. # 82) Ex. A at 11-27; *see also* Am.

11  Answer (Dkt. # 84) ¶¶ 18-27 (asserting invalidity counterclaim).)  The parties

12  subsequently filed their respective motions for summary judgment and *Daubert* motions.

13  (*See generally* Barnhart MSJ; Schuyleman MSJ; Klopp Mot. (Dkt. # 92); Klopp MTS

14  (Dkt. # 86); Morman Mot. (Dkt. # 91); Perkin Mot. (Dkt. # 93).)

15      The court ruled on the parties' *Daubert* motions in a separate order.  The parties'

16  summary judgment motions are fully briefed and ripe for consideration.

17

18

19

20

21

22

---

[5] Because the '244 Patent does not contain any claim with an effective filing date on or after September 16, 2012, the applicable version of section 112 is the one preceding the changes made by the America Invents Act.  *See* Leahy-Smith America Invents Act, Pub. L. No. 112-29 § 4(e), 125 Stat. 284, 297 (2011); *see also Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1346 n.2 (Fed. Cir. 2022).  The parties agree that the '244 Patent is governed by the pre-America Invents Act ("AIA") version of 35 U.S.C. § 112.  (*See* Schuyleman MSJ at 1 n.1; *see* Barnhart MSJ at 1.)

ORDER - 4

1

### III.    ANALYSIS

2       Barnhart moves for summary judgment on (1) Mr. Schuyleman's claims for direct

3   infringement and induced infringement and (2) Barnhart's counterclaim concerning

4   invalidity of the '244 Patent.  (*See generally* Barnhart MSJ.)  Mr. Schuyleman moves for

5   summary judgment on Barnhart's invalidity counterclaim.  (*See generally* Schuyleman

6   MSJ.)  The parties agree that Barnhart is entitled to summary judgment regarding Mr.

7   Schuyleman's induced infringement claim.  (*See* Barnhart MSJ at 24-26; Schuyleman

8   Resp. at 2 n.2.)  The parties dispute, however, whether summary judgment in Barnhart's

9   favor is appropriate with respect to Mr. Schuyleman's direct infringement claim and

10  Barnhart's invalidity counterclaim.  (Barnhart MSJ at 26-33; Schuyleman Resp. at 11-16;

11  Schuyleman MSJ at 6-7.)

12      As explained below, the court grants Barnhart's motion for summary judgment on

13  its invalidity counterclaim, and denies Mr. Schuyleman's motion for summary judgment.

14  The court therefore need not decide the remaining issues raised in Barnhart's summary

15  judgment motion.

16  **A.    Summary Judgment Legal Standard**

17      Summary judgment is appropriate if the evidence viewed in the light most

18  favorable to the non-moving party shows "that there is no genuine dispute as to any

19  material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

20  56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the movant has

21  made this showing, the burden shifts to the nonmoving party to identify specific evidence

22  showing that a material factual issue remains for trial.  *Celotex*, 477 U.S. at 323-24.

1    The nonmoving party may not rest on mere allegations or denials from its pleadings, but

2    must "cit[e] to particular parts of materials in the record" demonstrating the presence of a

3    material factual dispute.  Fed. R. Civ. P. 56(c)(1)(A); *see also Anderson v. Liberty Lobby,*

4    *Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it might affect the outcome of the

5    case.  *Anderson*, 477 U.S. at 248.  A factual dispute is "'genuine' only if there is

6    sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far*

7    *Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S.

8    at 248-49).

9          In deciding cross-motions for summary judgment, the court must consider each

10    motion "on its own merits."  *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside*

11    *Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citation omitted).  Indeed, it is well-settled in

12    this circuit that "the filing of cross-motions for summary judgment, both parties asserting

13    that there are no uncontested issues of material fact, does not vitiate the court's

14    responsibility to determine whether disputed issues of material fact are present." *Id.*

15    (quoting *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978)).

16    **B.**      **Barnhart's Invalidity Counterclaim**

17          Barnhart contends that it is entitled to summary judgment on its invalidity

18    counterclaim because the '244 Patent is invalid as indefinite.  (*See* Barnhart MSJ at

19    26-33.)  Specifically, Barnhart argues that the "description and depictions of the 'offset

20    hoisting apparatus' are internally inconsistent[,]" within the '244 Patent and a person of

21    ordinary skill in the art ("POSITA") therefore could not determine the scope of the claims

22    recited therein.  (*Id.* at 26.)  Mr. Schuyleman disagrees and separately moves for

1  summary judgment in his favor on Barnhart's invalidity counterclaim.  (*See* Schuyleman

2  Resp. at 11-15; Schuyleman MSJ.)  Below, the court first discusses the legal standard

3  governing patent indefiniteness, and then addresses the parties' respective arguments.

4        1.  Indefiniteness Legal Standard

5        Section 112 of the Patent Act requires a patent specification to "conclude with one

6  or more claims particularly and distinctly claiming the subject matter which the applicant

7  regards as his invention."  35 U.S.C. § 112, ¶ 2.  A patent is invalid for indefiniteness,

8  however, "if its claims, read in light of the specification delineating the patent, and the

9  prosecution history, fail to inform, with reasonable certainty, those skilled in the art about

10  the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901

11  (2014).  These principles advance the important policy of enabling "a person of ordinary

12  skill in the art [to] determine whether or not an accused product . . . infringes the claim."

13  *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1347 (Fed. Cir. 2022)

14  (citation omitted).

15        The definiteness requirement "mandates clarity, while recognizing that absolute

16  precision is unattainable."  *Nautilus*, 572 U.S. at 910.  The patent, however, must "be

17  precise enough to afford clear notice of what is claimed."  *Id*.  A claim is accordingly

18  invalid as indefinite "if its language 'might mean several different things and no informed

19  and confident choice is available among the contending definitions.'"  *Media Rts Techs.,*

20  *Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1371 (Fed. Cir. 2015) (quoting *Nautilus*,

21  572 U.S. at 911 n.8).  The moving party must prove invalidity by clear and convincing

22

1    evidence. *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1228 (Fed.

2    Cir. 2016).

3         Whether a patent is invalid for indefiniteness is a question of law. *Id.* The

4    "indefiniteness analysis involves general claim construction principles[.]" *Sonix Tech.*

5    *Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1378 (Fed. Cir. 2017). In assessing a term

6    for indefiniteness, the court begins by examining the intrinsic evidence—including "the

7    [patent] claims, specification, and prosecution history." *Teva Pharms. USA, Inc. v.*

8    *Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015). The court may also consider

9    extrinsic evidence, such as expert or patentee testimony, if the intrinsic record is not

10   clear. *See Sensor Elec. Tech., Inc. v. Bolb, Inc.*, No. 18-CV-05194-LHK, 2019 WL

11   4645338 at *3 (N.D. Cal. Sept. 24, 2019). Extrinsic evidence, however, is "generally of

12   less significance than the intrinsic record" when construing claim terms. *Allergan Sales,*

13   *LLC v. Sandoz, Inc.*, 935 F.3d 1370, 173 (Fed. Cir. 2019). "If a claim is indefinite based

14   'only on intrinsic evidence,'" then it is "'unnecessary to rely on . . . extrinsic evidence.'"

15   *See Sensor Elec. Tech.*, 2019 WL 4645338 at *30 (quoting *Interval Licensing LLC v.*

16   *AOL Inc.*, 766 F.3d 1364, 1370 n.6 (Fed. Cir. 2014)). The court considers these

17   principles in assessing the parties' respective indefiniteness arguments.

18         2.  <u>Indefiniteness of the Term "Offset Hoisting Apparatus"</u>

19         The parties dispute whether the term "offset hoisting apparatus" is indefinite. (*See*

20   Barnhart MSJ at 26-33; Schuyleman Resp. at 11-15; Barnhart MSJ Reply at 13-15.) The

21   court's indefiniteness inquiry begins with the language of the claims. *See Berkheimer v.*

22

1   *HP Inc.*, 881 F.3d 1360, 1363 (Fed. Cir. 2018).  As relevant here, claim 1 of the '244

2   Patent recites:

3           1. *An improvement for an offset hoisting apparatus* having at least a
        top side, a bottom side, a front side, and a rear side, the offset hoisting
4       apparatus for use with a crane apparatus to lift a load, *the improvement
        comprising*:[6]

5
        a rigid boom having a distal end and a proximal end, the distal end including
6               a hook means for supporting the load;

7       a front mount having a front boom aperture adapted for confining the boom
                to slidable movement therethrough, the front mount fixed with the
8               offset hoisting apparatus, the distal end cantilevered from the front
                mount to extend the load through an opening in a wall; and
9
        a rear mount having a rear boom aperture adapted for confining the boom to
10              slidable movement therethrough, the rear mount fixed with the offset
                hoisting apparatus;
11
        whereby the boom may be selectively slid between a retracted and an
12              extended position, or therebetween, and the load may then be secured
                to the hook means at the distal end of the boom, the crane apparatus
13              then able to lift the load.

14  ('244 Patent, at col. 6:2-23 (emphasis added).)  Barnhart asserts that the claim language

15  teaches that the front mount, rear mount, and rigid boom are elements of the *improvement*

16  to the offset hoisting apparatus, rather than to the offset hoisting apparatus *itself*.  (*See*

17  Barnhart MSJ at 27.)  In support of its argument, Barnhart argues that the claim language

18  describes the front mount, rear mount, and rigid boom as distinct components of the

19  claimed invention.  (*Id.* at 28-29.)  Specifically, Barnhart points to the language of claim

20

21          [6] The '244 Patent further provides that "the words 'comprise,' 'comprising,' and the like
        are to be construed in an inclusive sense as opposed to an exclusive or exhaustive sense:  that is
22      to say, in the sense of 'including, but not limited to.'"  ('244 Patent at col. 3:18-21.)

1 requiring that the front mount and rear mount (both of which "hav[e] aperture[s] adapted for confining the [rigid] boom") must be "fixed with"[7] the offset hoisting apparatus. ('244 Patent at 6:10-16; Barnhart MSJ at 28-29.)  In Barnhart's view, "fixed with" "prescribes an attachment between physically separable components."  (*Id.* at 28.)  Therefore, according to Barnhart, the front mount, rear mount, and rigid boom must be physically separate components from the offset hoisting apparatus under the claim language.  (*Id.* at 28.)  Barnhart's invalidity and non-infringement expert, Gregg S. Perkin, illustrates his understanding of the claimed configuration described in claim 1 as follows:



(*Id.* at 29 (citing Perkin Op. Report ¶ 361).)

In contrast, Barnhart asserts, the abstract and specification[8] of the '244 Patent describes the *offset hoisting apparatus*, rather than the claimed *improvement*, as

---

[7] During the claim construction phase, the court construed "fixed with" to mean "attached in some way to."  (CC Order at 12.)

[8] Barnhart asserts that the abstract and specification are inconsistent.  (*See* Barnhart MSJ at 27-28.)  The court does not read the abstract and specification to be inconsistent; rather, the abstract is simply less descriptive than the abstract.  Because the written description in the specification is key to interpreting the claim language, *see Vitronics Corp. v. Conceptronic,*

1    "encompassing" the front mount, rear mount, and rigid boom.[9]  (Barnhart MSJ at 27

2    (citing Perkin Op. Report ¶¶ 64, 357).)  To illustrate its argument, Barnhart refers to a

3    diagram in Mr. Perkin's opening report depicting his understanding of the claimed

4    improvement as described in the written description of the '244 Patent:



11   (Barnhart MSJ at 27 (citing Perkin Op. Report ¶ 361).)  Barnhart therefore argues that

12   reading the claim language and the written description of the '244 Patent together renders

13   the term "offset hoisting apparatus" indefinite.  (*See* Barnhart MSJ at 26-28.)  Mr.

14   Schuyleman responds that the meaning of "offset hoisting apparatus" is "clear" under the

15   '244 Patent claims.  (*See* Schuyleman Resp. at 12.)

-------

18   *Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996), the court's analysis relies on the written description in
     the specification, rather than the abstract.

19        [9] Barnhart also argues that the specification could alternatively be interpreted to mean
     that the offset hoisting apparatus comprises only the rigid boom and front mount—and not the
20   rear mount—because, in Barnhart's view, the term "includes" is used inconsistently in the cited
     sections of the specification discussing the front and rear mounts.  (Barnhart MSJ at 27-28 (citing
21   '244 Patent at col. 3:43-45, 3:49-51).)  Barnhart does not explain, however, how "includes" is
     used inconsistently in these portions of the '244 Patent, and the inconsistency is not readily
22   apparent to the court.  The court therefore does not address this portion of Barnhart's argument.

1    In assessing a term for indefiniteness, the court must read the disputed claim

2  language with the written description.  *See Sonix Tech.*, 844 F.3d at 1378 (reading the

3  claim language alongside the written description to determine indefiniteness); *Vitronics*

4  *Corp.*, 90 F.3d at 1582 ("The language of the asserted claims is "always read in view of

5  the written description.").  The language of claim 1 provides that "[w]hat is claimed

6  is . . . [a]n *improvement for* an offset hoisting apparatus . . . , the *improvement*

7  comprising" a rigid boom, a front mount, and rear mount.  ('244 Patent at col. 6:1-23

8  (emphasis added).)  The front mount and rear mount must be "fixed with" the offset

9  hoisting apparatus "with a clamping means."[10]  (*Id.* at cols. 6:10-17, 3:61-62; *see id.* at

10  col. 6:65-67 (stating that the front and rear mounts are *each selectively mounted to the*

11  *offset hoisting apparatus* with a clamping means") (emphasis added).)  And the front and

12  rear mounts both have apertures "adapted for confining the [rigid] boom to slidable

13  movement therethrough."  (*Id.* at col. 6:10-11, 6:15-16.)  Claim 4 further recites "[t]he

14  improvement of claim 1 wherein . . . the boom is prevented from slidable movement *with*

15  *respect to* the offset hoisting apparatus."  (*Id.* at 6:30-35 (emphasis added).)

16    Having reviewed the claim language, the court concludes that claim 1 of the '244

17  Patent teaches that the claimed *improvement* to the offset hoisting apparatus, rather than

18  the offset hoisting apparatus itself, "comprises" the front mount, rear mount, and rigid

19  boom elements.  This conclusion is reinforced by the claim language describing the

20  improvement as distinct from the offset hoisting apparatus.  More specifically, under the

21

22    [10] The '244 Patent defines "clamping means" as "at least one bolt and nut."  (*Id.* at col. 3:62-63.)

1    language of claim 1, the front mount and rear mount could only be "selectively mounted

2    to" and "fixed with" the offset hoisting apparatus—and the rigid boom could only be

3    "prevented from slidable movement with respect to" the offset hoisting apparatus, if

4    those three elements are physically separable from the offset hoisting apparatus.

5    Accordingly, the court agrees with Barnhart that, under the claim language, the front

6    mount, the rear mount,[11] and the rigid boom must be separate from the offset hoisting

7    apparatus.

8            Portions of the written description of the '244 Patent, however, depart from the

9    teachings of the claim language.  Although certain parts of the written description

10   describe the front mount, rear mount, and rigid boom as physically separate from the

11   offset hoisting apparatus (*see, e.g.*, *id.* at col. 3:45-46, 3:51-52 (describing the front

12   mount and rear mount as "fixed with" the offset hoisting apparatus); *id.* at col. 4:37-38

13   (describing the boom as being "prevented from slidable movement with respect to the

14   offset hoisting apparatus")), other parts of the written description provide that the offset

15   hoisting apparatus—*not* the improvement to the offset hoisting apparatus—"comprises"

16   the rigid boom and "includes" the front mount and rear mount.  (*Id.* at col. 3:38-43,

17   3:49-50.)  This description directly conflicts with the language of claim 1 ascribing these

18   claim elements to the improvement, rather than to the offset hoisting apparatus.  (*See id.*

19

20

21          [11] For purposes of resolving Barnhart's motion, the court narrowly concludes that the
     front and rear mounts must be separate *from the offset hoisting apparatus*.  The court offers no
22   opinion as to whether the front and rear mounts must be individually separate components.

1    at col. 6:1-23 (stating that "the *improvement* compris[es]" a rigid boom, a front mount,

2    and rear mount) (emphasis added).)

3        The figures in the '244 Patent further compound the apparent discrepancy between

4    the claim language and the written description.  For instance, figure 1 purports to show

5    "an improvement **10** for an offset hoisting apparatus **20** for use with a crane apparatus **30**

6    to lift a load."  (*Id.* at col. 3:35-36.)  Figure 1, however, identifies the offset hoisting

7    apparatus as the complete structure including the front mount (**60**), rear mount (**70**), and

8    the rigid boom (**40**), and the claimed improvement is not separately identified.  (*See id.*,

9    fig. 1.)  In figure 2, however, the *improvement* is identified as the complete structure, and

10   the offset hoisting apparatus is identified as a discrete structure separate from the other

11   claim elements.  (*See id.*, fig. 2; *see also* Barnhart MSJ at 30 (arguing that figure 2

12   "identif[ies] [the offset hoisting apparatus as] a strut or a bridled bar").)  Figures 1 and 2

13   from the '244 Patent are reproduced below:



FIG. 1

1
2
3
4
5
6
7
8
9
10



FIG. 2

11

12      In his response, Mr. Schuyleman does not address the identified inconsistencies

13  between the claim language, the written description, and the figures.  (*See generally*

14  Schuyleman Resp.)  Instead, he asserts that the meaning of the term "offset hoisting

15  apparatus" can be derived from the language of claim 1.  (Schuyleman Resp. at 12; *see*

16  *id.* at 11 (stating that the claim language "makes clear" the claimed configuration of the

17  invention).)  In support, Mr. Schuyleman cites to Dr. Klopp's rebuttal report, which

18  posits that "the term 'offset hoisting apparatus' is clear" because claim 1 is written in

19  "Jepson"[12] format and "the '244 Patent[] disclos[es] [] prior art such as Wheeler[13] upon

20

          [12] The meaning of a "Jepson" claim is discussed below.

21
          [13] In discussing the Wheeler prior art reference, Dr. Klopp refers to U.S. Patent No.
22  3,675,961.  (*See* Klopp Reb. Report (Dkt. # 102-4) at 22.)  That patent is titled "Horizontal Load
    Positioner" and describes a "horizontal load positioner to facilitate depositing a load within or

1  which the Jepson format claimed improvements are applied[.]" (*Id.* at 12.)  Mr.

2  Schuyleman further contends that the following diagram is the correct configuration of

3  his claimed improvement:



10  (*Id.* at 13 (citing Klopp Reb. Report at 39).)[14]  In reply, Barnhart asserts that Mr.

11  Schuyleman improperly "[b]lur[s] the line" between the elements of the claimed

12  improvement and the offset hosting apparatus, and that the Jepson format does not render

13  the term "offset hoisting apparatus" definite.  (*See* Barnhart MSJ Reply at 13-14.)  For

14  the reasons explained below, the court agrees with Barnhart.

15  "[A] Jepson claim is directed to the improvement it makes to the prior art."  *In re*

16  *Xencor, Inc.*, 130 F.4th 1350, 1361 (Fed. Cir. 2025).  A "Jepson" claim contains three

17  parts:

18

19  removing a load from an opening in a building with the aid of a hoist line[.]"  ('961 Patent at col.
8:70-73.)

20

21  [14] The court observes that this is the same figure that Barnhart used in support of its
argument that the abstract and specification describe the offset hoisting apparatus—rather than
the improvement—as "encompassing" the front mount, rear mount, and rigid boom.  (*See*

22  Barnhart MSJ at 27.)

(1) a preamble comprising a general description of all the elements or steps of the claimed combination which are conventional or known, (2) a phrase such as 'wherein the improvement comprises,' and (3) those elements, steps and/or relationships which constitute that portion of the claimed combination which the applicant considers as the new or improved portion.

37 C.F.R. § 1.75(e). The parties agree—and the court has held—that claim 1 is written in "Jepson" format. (5/6/25 Min. Order (Dkt. # 117); *see* Barnhart Supp. Br. (Dkt. # 118); Schuyleman Supp. Br. (Dkt. # 119).) The parties dispute, however, whether the "Jepson" format of claim 1 renders the term "offset hoisting apparatus" sufficiently definite such that a POSITA would understand the scope of the claimed invention. (*See* Barnhart MSJ; Schuyleman Resp.)

The term "offset hoisting apparatus" appears in the preamble of independent claim 1, and each of claims 4, 16, and 17—the dependent claims asserted by Mr. Schuyleman—contain that term. (*See* '244 Patent at cols. 6:1-5, 6:30-37, 8:1-10.) During the claim construction phase of this case, the court held that the preamble of claim 1 is limiting. (*See* Markman Hr'g Tr. (Dkt. # 75) at 6:2-5, 6:13-19; *see also* CC Order at 5.) This means that the preamble "recites limitations of [] claim [1], or . . . is necessary to give life, meaning, and vitality to th[at] claim." *See Xencor*, 130 F.4th at 1357 (citation and internal quotations omitted). Moreover, when the "Jepson" format is used in a claim, as it is in claim 1 of the '244 Patent, the preamble of that claim "recites prior art which forms no part of the inventor's patentable contribution" and "defines, in part, structural limitations of the claimed invention" described in the prior art. *Boston Sci. Corp. v. Micrus Corp.*, 556 F. Supp. 2d 1045, 1059-60 (N.D. Cal. 2008) (citing *Epcon Gas Sys. Inc. v. Baur Compressors, Inc.*, 279 F.3d 1022, 1029 (Fed. Cir. 2002)); *see also Dali*

1   *Wireless, Inc. v. Corning Optical Commc'ns LLC*, No. 20-CV-06469-EMC, 2021 WL

2   3037700, at *3 n.2 (N.D. Cal. July 19, 2021) ("[t]he preamble in a Jepson claim

3   constitutes a limitation").  Said differently, the preamble in a Jepson claim "describ[es]

4   the conventional or known elements" of the claimed invention, and the language

5   following the transition phrase, "the improvement compris[ing]," identifies the elements

6   the inventor considers "the new or improved portion" of the claimed invention.  37

7   C.F.R. § 1.75; *see Arctic Cat Inc. v. GEP Power Prods, Inc.*, 919 F.3d 1320, 1330 (Fed.

8   Cir. 2019) (discussing the Jepson claim format).  Accordingly, because the term "offset

9   hoisting apparatus" appears in the preamble of the Jepson claim, that term functions to

10  define the "conventional or known" structural limitations on Mr. Schuyleman's claimed

11  invention, and the body of the claim recites the limitations constituting the improvement

12  over the prior art.  *See Arctic Cat*, 919 F.3d at 1330; *Boston Sci. Corp.*, 556 F. Supp. 2d at

13  1060.  Logically speaking, therefore, the "offset hoisting apparatus" cannot

14  simultaneously comprise the prior art and the "new and improved portion" of Mr.

15  Schuyleman's invention.  *See Boston Sci. Corp.*, 556 F. Supp. 2d at 1060; *Arctic Cat Inc*,

16  919 F.3d at 1330.[15]

17

18

19

        [15] Indeed, in the context of deciding whether the preamble in a Jepson claim had a

20  sufficient written description, the Federal Circuit affirmed that the preamble of a Jepson claim
    recites limitations that are distinct from the claimed improvement:  "A patentee cannot be

21  permitted to use a Jepson claim to avoid the requirement that []he be in possession of the claimed
    invention simply by asserting something is well-known in the prior art.  For example, a patentee

22  cannot obtain a Jepson claim with a preamble that says that a time machine is well-known in the
    art without describing a time machine."  *Xencor*, 130 F.4th at 1362.

1    Mr. Schuyleman agrees that the "offset hoisting apparatus" is the prior art.  (*See*
2    Schuyleman Resp. at 12 (citing Klopp Reb. Report at 38 ("Thus, the prior art is an offset
3    hoisting apparatus.").)  And he does not dispute that "the improvement [he] claimed in
4    the ['244 P]atent is different from an offset hoisting apparatus."  (*See* 11/8/24 Dep. of J.
5    Schuyleman (Dkt. # 94-21) at 41:3-6.)  Rather, Mr. Schuyleman is "just [claiming] the
6    improvement to" an offset hoisting apparatus.  (*Id.* at 40:3-19.)  Yet, the '244 Patent
7    vacillates between describing the offset hoisting apparatus and the improvement as
8    distinct structures and as one and the same.  (*Compare* '244 Patent at col. 6:5-23 (reciting
9    that the *improvement* "comprises" a rigid boom, front mount, and rear mount), *with id.* at
10   col. 3:38-50 (reciting that the *offset hoisting apparatus* "comprises" a rigid boom and
11   "includes" a front mount, and rear mount).)  Mr. Schuyleman makes no attempt to
12   reconcile these inconsistencies in the intrinsic evidence in his response.  (*See generally*
13   Schuyleman Resp.)

14       Instead, relying on extrinsic evidence, Mr. Schuyleman posits that the term "offset
15   hoisting apparatus" is "clear" because "[c]laim 1 adds improvements to the prior art
16   offset hoisting apparatus" and the "improved offset hoisting apparatus . . . includes,
17   among other improvements, a rigid boom, a front mount, and a rear mount."  (*Id.* at 12-13
18   (quoting Klopp Reb. Report at 38-39).)  This circular argument, however, merely
19   describes what a Jepson claim is—an improvement over the prior art—and fails to
20   distinguish the offset hoisting apparatus from Mr. Schuyleman's claimed improvement.
21
22

1  *See Boston Sci. Corp.*, 556 F. Supp. 2d at 1059-60 (stating that the preamble of a Jepson

2  claim "recites prior art which forms no part of the inventor's patentable contribution").[16]

3         The court gains no clarity from reviewing other portions of Dr. Klopp's report.

4  Indeed, Dr. Klopp similarly blends the claim limitations together, opining that "the

5  *improved offset hoisting apparatus comprises* a front mount having a front boom aperture

6  and a rear mount having a rear boom aperture." (Klopp Reb. Report at 16 (emphasis

7  added).) Dr. Klopp advances that "[a] POSITA would know" what an "offset hoisting

8  apparatus" is because, in his view, the Wheeler patent teaches "an offset hoisting

9  apparatus without the improvements claimed in the '244 Patent[.]" (*Id.* at 22.) But

10 conclusory statements about what a POSITA would understand are insufficient to create a

11 genuine dispute of material fact to survive summary judgment. *Horizon Pharm., Inc. v.*

12 *Dr. Reddy's Labs. Inc.*, 839 F. App'x 500, 505 (Fed. Cir. 2021); *see also Imperial*

13 *Tobacco Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1581 (Fed. Cir. 1990) ("[A]

14 conclusory statement on the ultimate issue does not create a *genuine* issue of fact.")

15 (emphasis in original).) Dr. Klopp further opines that the Wheeler patent "describes the

16 application of placing a load into an opening in a building using a crane." (Klopp Reb.

17 Report at 38.) But this opinion not only fails to describe what an offset hoisting

18 apparatus is, it also fails to differentiate between the prior art and Mr. Schuyleman's

19 claimed invention over that prior art. More importantly, even assuming that a POSITA

20

21         [16] At deposition, Mr. Schuyleman testified that he "d[id]n't know how to describe" an
"offset hoisting apparatus" and that "putting [it] in words [wa]s difficult." (12/9/24 Dep. of J.

22 Schuyleman (Dkt. # 94-3) at 52:22-24, 53:1-2.)

1    could determine the meaning of an "offset hoisting apparatus" by reviewing the prior art,

2    such fact would not resolve the inconsistencies in the claim language, the written

3    description, and the figures.[17]

4          The issue here is that the '244 Patent simultaneously ascribes the front mount, rear

5    mount, and rigid boom as elements of the "offset hoisting apparatus"—the "prior art

6    which forms no part of [Mr. Schuyleman's] patentable contribution," *Boston Sci. Corp.*,

7    556 F. Supp. 2d at 1059-60—and of the "improvement" to the offset hoisting apparatus—

8    the "new or improved portion" of the claimed invention.  *See Arctic Cat*, 919 F.3d at

9    1330.  But under the Jepson claim format, and as taught by the '244 Patent, the "offset

10   hoisting apparatus" and the elements of the improvement function as separate structural

11   limitations.  *See id.*  Mr. Schuyleman asserts that a POSITA would understand the scope

12   of the claimed invention from the claim language, but he does not cite any evidence

13   resolving the discrepancy between the claim language and the written description and

14   figures in the specification.  (*See generally* Schuyleman Resp.)  Indeed, in construing

15   claim terms, a POSITA is "deemed to read the [disputed] claim term not only in the

16   context of the particular claim in which the disputed term appears, but in the context of

17   the entire patent, including the specification."  *Phillips v. AWH Corp.*, 415 F.3d 1303,

18   1313 (Fed. Cir. 2005).  Consequently, the court concludes that, in reviewing the claim

19

20          [17] At deposition, Dr. Klopp agreed that there was a "disconnect between what's

21   happening in Figure 1 and the 20 in Figure 2[.]"  (Dep. of R. Klopp (Dkt. # 94-10) at 72:4-12.)
     In Dr. Klopp's opinion, however, that disconnect was "not relevant because when you look at the
     broad claim and specification of figures in toto, you do understand what—what an offset hoisting

22   apparatus is."  (*Id.* at 72:10-12.)

1    language, the written description, and the figures of the '244 Patent, a POSITA could not

2    with "reasonable certainty" determine the scope of the claimed invention. *Nautilus*, 572

3    U.S. at 910; *see VLSI Tech. LLC v. Intel Corp.*, 706 F. Supp. 3d 953, 988 (N.D. Cal.

4    2023) (reaching the same conclusion).

5           Mr. Schuyleman argues that Barnhart's indefiniteness argument is "undercut" by

6    Mr. Perkin's report because he opines that the term "offset hoisting apparatus" is

7    indefinite, but, in the alternative, identifies an "offset hoisting apparatus" in his prior art

8    analyses. (*See* Schuyleman Resp. at 13 (citing Perkin Op. Report (Dkt. # 94-13) ¶ 82);

9    *id.* at 14-15.)[18]  Mr. Schuyleman asserts that Barnhart's indefiniteness argument is

10   meritless because Mr. Perkin can "identify, define and describe an 'offset hoisting

11   apparatus' in every circumstance but for that required to . . . find that the claims of the

12   '244 Patent are definite." (*See id.* at 15-16.)  The court is not persuaded.  As discussed in

13   the court's *Daubert* order, Mr. Schuyleman provides no authority holding that Mr. Perkin

14   cannot advance alternative arguments in his expert reports.  Indeed, the Federal Circuit

15   has held that even indefinite claims can be compared to the prior art for purposes of an

16   anticipation or obviousness analysis. *See Cochlear Bone Anchored Sols. AB v. Oticon*

17   *Med. AB*, 958 F.3d 1348, 1360 (Fed. Cir. 2020); *cf. Sonix Tech. Co. v. Publications Int'l,*

18   *Ltd.*, 844 F.3d 1370, 1381 (Fed. Cir. 2017) ("Neither does the fact that an expert has

19

20

21         [18] Specifically, in paragraph 82 of his opening report, Mr. Perkin opines that "[f]or the purpose of analyzing the term with respect to the prior art, the term 'offset hoisting apparatus' constitutes an umbrella term for a suspended lifting device designed to lift a load which is not positioned directly under the suspension point."  (Perkin Op. Report ¶ 82; *see also id.* ¶ 60

22   (describing an offset hoisting apparatus as an "offset lifting device").)

1  applied a contested claim term without difficulty render a claim immune from an

2  indefiniteness challenge.").

3      Barnhart has set forth intrinsic and extrinsic evidence from the '244 Patent

4  demonstrating that the term "offset hoisting apparatus" is indefinite.  (*See* Barnhart MSJ

5  at 26-33; Barnhart MSJ Reply.)  Mr. Schuyleman has not provided intrinsic or extrinsic

6  evidence sufficient to raise a genuine dispute of material fact regarding the indefiniteness

7  of that term.  (*See generally* Schuyleman Resp.)  In reading the claim language in tandem

8  with the written description and figures, the '244 Patent lacks the precision required to

9  "afford clear notice of what is claimed."  *Nautilus*, 572 U.S. at 910.  Accordingly, the

10  court concludes that Barnhart has provided clear and convincing evidence that the term

11  "offset hoisting apparatus" is indefinite and that claim 1 is therefore invalid.  *See Cox*

12  *Commc'ns*, 838 F.3d at 1228; *see also MyMedicalRecords, Inc. v. Walgreen Co.*, Nos.

13  2:13-CV-00631 ODW (SHx), 2:13-cv-02538-ODW (SHx), 2:13-cv-03560-ODW (SHx),

14  2:13-cv-07285-ODW (SHx), 2014 WL 7338822, at *1 (C.D. Cal. Dec. 22, 2014)

15  (granting defendants' summary judgment motion and holding that "a claim that includes

16  an indefinite limitation is invalid pursuant to 35 U.S.C. § 112").

17      Because Asserted Claims 4, 16, and 17 are dependent claims that incorporate

18  claim 1 and the term "offset hoisting apparatus," those claims are also invalid as

19  indefinite.  (*See* '244 Patent at cols. 6:30-37, 8:1-10); *see also Interval Licensing*, 766

20  F.3d at 1374 (finding "the [phrase] 'unobtrusive manner that does not distract a user'" to

21  be indefinite and that "[t]he claims that depend on that phrase are thus invalid for

22  indefiniteness"); *Fargo Elecs., Inc. v. Iris, Ltd., Inc.*, 287 F. App'x 96, 99 (Fed. Cir.

1   2008) (holding that "independent claim 8 is invalid as indefinite" and "[b]ecause

2   dependent claims 9 through 15 depend from claim 8 . . . they are also invalid as

3   indefinite").  Thus, the court concludes that Barnhart is entitled to summary judgment

4   with respect to its invalidity counterclaim.  *See VLSI Tech.*, 706 F. Supp. 3d at 988

5   (granting summary judgment after concluding patent was invalid as indefinite).  Because

6   the court concludes that the '244 Patent is invalid as indefinite, the court does not reach

7   the remaining arguments in Barnhart's motion for summary judgment.  *Richdel, Inc. v.*

8   *Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983) ("The claim being invalid there is

9   nothing to be infringed.").

10              3.  Mr. Schuyleman's Motion for Summary Judgment

11          The court independently considers the merits of Mr. Schuyleman's summary

12  judgment motion.  *Fair Hous. Council of Riverside Cnty.*, 249 F.3d at 1136.  Mr.

13  Schuyleman asserts that he is entitled to summary judgment on Barnhart's invalidity

14  counterclaim.  (*See generally* Schuyleman MSJ.)  He does not, however, provide any

15  evidence in support of his motion.  Rather, Mr. Schuyleman asserts that "[s]hould the

16  [c]ourt exclude the testimony of Mr. Perkin, Barnhart will be without evidence to support

17  its claim of invalidity and [Mr.] Schuyleman would be entitled to summary judgment of

18  no invalidity."  (*Id.* at 2.)  As further detailed in the court's *Daubert* order, the court did

19  not exclude the portions of Mr. Perkin's testimony or report bearing on the parties'

20  indefiniteness dispute.  Furthermore, the court has reviewed Mr. Schuyleman's summary

21  judgment motion and concludes that none of the arguments raised in his motion

22

undermine the conclusion that Barnhart is entitled to summary judgment on its invalidity

counterclaim.  Accordingly, Mr. Schuyleman's summary judgment motion is denied.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS Barnhart's motion for summary

judgment with respect to its invalidity counterclaim and Mr. Schuyleman's direct and

induced infringement claims (Dkt. # 94).  Mr. Schuyleman's motion for summary

judgment is DENIED (Dkt. # 95).  The parties' respective motions *in limine* are DENIED

as moot (Dkt. ## 115, 116).  The court DISMISSES this action with prejudice.

Dated this 15th day of May, 2025.

JAMES L. ROBART
United States District Judge

ORDER - 25